IN THE MATTER OF AN INVESTIGATION BY THE BAR ASSOCIATION OF HUDSON COUNTY INTO THE ALLEGED UNETHICAL OR IMPROPER CONDUCT OF CERTAIN ATTORNEYS-AT-LAW.

Argued May 3, 1932—Decided June 11, 1932.

Before Justices TRENCHARD, CASE and BROGAN.

For the rule, *Collins & Corbin* (*Edward A. Markley,* of counsel).

*Contra, Edmund S. Johnson.*

The opinion of the court was delivered by

CASE, J. This matter comes up on rule, issued on the petition of B., an attorney-at-law of this state and a member of the Hudson County Bar Association, directing the committee on ethics, grievances and prosecutions, which is in fact the ethics committee of the Hudson County Bar Association, to show cause why the proceedings before that committee in an investigation of the "ambulance chasing" activi-

ties and other unethical practices on the part of the attorneys of Hudson county should not be quashed so far as concerns the said B.

The printed state of case discloses that the Hudson County Bar Association, at a meeting held in December, 1930, adopted a resolution reciting "ambulance chasing" activities and other unethical practices of a serious character on the part of attorneys in that county and directing that a petition be filed with the Supreme Court calling the attention of the court to the condition and requesting the appointment of a Supreme Court commissioner or other officer to take testimony and investigate or the taking of other action thereon. At the May, 1931, term a petition based on that resolution was presented to and heard by the Supreme Court *en banc*. Within a few days thereafter, on May 9th, 1931, the chairman of the ethics committee received a letter from the Chief Justice stating:

"I am instructed by the court to advise you that, after a consultation had by its members, it was concluded that the method of investigation to be adopted by your association for ascertaining whether or not certain attorneys practicing in Hudson county were guilty of 'ambulance chasing' or other unethical conduct, should be that which is indicated by chapter 112 of the laws of 1930. *Pamph. L.* 1930, *p.* 360."

Chapter 112 (*Pamph. L.,* 1930), is entitled: "An act empowering the Supreme Court to issue process to compel the attendance and testimony of witnesses before the ethics committee of a duly recognized bar association or lawyers' club, providing the procedure in relation thereto, and penalties and punishment for refusal or failure to obey." The first section of the act provides that:

"Upon the application or petition to him, by the chairman of the duly authorized ethics committee of any county or state bar association or lawyers' club which has been recognized as such by the Supreme Court of this state as is hereinafter provided, setting forth that in an investigation before it into the alleged unethical or improper conduct of any attorney or counselor-at-law of this state, certain person or

persons are material witnesses in said investigation and are residents of this state, any justice of the Supreme Court of this state may make an order awarding process of subpœna out of said court, commanding such person or persons to appear before said ethics committee to give testimony and answer questions as required, and produce papers, documents, books and records concerning the matters and persons under investigation; and upon filing such order in the clerk's office of the Supreme Court, it shall be the duty of the said clerk to issue process of subpœna under the seal of said court, requiring said person or persons to appear and testify before the said committee, at a time and place named therein, and so from day to day until the examination of such person or persons shall be completed; and said subpœna may contain a direction that such person bring with him to such examination, any books, papers or documents therein mentioned, and it shall also be the duty of said clerk to issue under the seal of said court, such other or further order in reference to the examination, appearance, production of books, papers or documents before said committee as said justice shall direct."

On being informed of the communication from the Chief Justice the Hudson County Bar Association directed its committee on ethics, grievances and prosecutions to proceed to investigate the abuses complained of. Recognition of the association by the Supreme Court as a bar association, requisite under the cited statute, was had by an order made by Mr. Justice Campbell, presiding in Hudson county, dated October 17th, 1931, and entered October 20th, 1931. Thereafter the committee from time to time filed petitions for the process of subpœna against various witnesses and received orders from the Supreme Court, issued by Mr. Justice Campbell, directing the clerk to issue process of subpœna to the persons named in the petitions. These subpœnas were in fact issued by the clerk of the Supreme Court under the seal of his office as directed by the statute. One such subpœna, issued under an order made and entered March 8th, 1932, directed B. and others to appear *duces tecum*. On the return day B. appeared and asked for an adjournment and the ad-

journment was granted. No questions were asked or answered. Before the adjourned day the above mentioned rule issued and the inquiry, so far as B. is concerned, has remained in *statu quo*.

The prosecutor of the rule groups his argument under five points: (1) the committee had no right to compel him to appear and testify against himself; (2) the committee had no right to compel him to produce his private books, papers and records; (3) the committee had no right to conduct a general investigation; (4) the committee had no jurisdiction in the premises at all but on the contrary was a voluntary body with no legal authority to investigate the petitioner's general professional activities over a period of four years, and (5) the attempted procedure of the committee was unlawful and unconstitutional and therefore the proceedings and the subpœna to compel him to testify against himself should be quashed, set aside and for nothing holden.

It is not disputed that the Supreme Court has the authority to conduct a general inquiry into the conduct of members of the bar and to compel one such to testify as to his acts in his professional relations. That courts are vested with such authority, implied where not expressed, extending specifically to the practice of "ambulance chasing" has been admirably demonstrated in the opinion by Chief Justice Cardozo in the New York Court of Appeals in *Karlin* v. *Culkin,* 248 *N. Y.* 465; 162 *N. E. Rep.* 487; 60 *A. L. R.* 851. Inasmuch as the censuring, suspension and disbarment, as well as recommendation for the admission of members of the bar and the framing of rules for admission and for the practice devolve upon the court, the practical necessity for such authority is apparent. In a general inquiry the subjects of interrogation may or may not be infractions against the criminal law. Even if they be, disbarment is not punishment within the meaning of the criminal law. *Karlin* v. *Culkin, supra.* Such an inquiry is neither in duplication of nor in conflict with such inquisitions as may be conducted by other governmental agencies, as, for instance, by a grand jury. The purposes and functions are quite different. The goal in a court inquisition

of the character under consideration is the perfecting of the court rules and the fixing and maintenance of ethical and intellectual standards amongst practitioners.

But it is said that the proceedings under review do not constitute a court inquiry and that the Hudson County Bar Association is a mere volunteer, without obligation or responsibility, having statutory power to subpœna but no authority to interrogate the person thus subpœnaed; that without chapter 112 (*Pamph. L.* 1930), the association had no right to conduct an inquiry and that that statute confers none. We know of no deprivation against a bar association to inquire into the professionally unethical conduct of members of the bar, particularly when such persons are also its own members. The proposition that a person or an association may not ask questions and gather information by lawful means is novel. The power to compel attendance and answers is another matter. A reading of the statute, without necessity for comment, makes clear that the statute gives that power, and, if it be not otherwise present, the right to conduct an inquiry. The title of the act is comprehensive. It and section 1 appear above. Section 3 provides, in part, that "in case any person so summoned * * * shall refuse * * * to give testimony or to answer questions as required or to produce * * *; * * * said justice shall have power to enforce, by imprisonment in the county jail, * * * the answering of any question that may be proper and the production * * *."

We think that the power to interrogate as well as to subpœna was given by the statute, and we further consider that the provisions of the statute, together with the procedure had thereunder in the given case, make the inquiry one under the authority and direction of the court and therefore a court inquiry. When the Supreme Court, by formal order, recognized the Hudson County Bar Association as an association under the statute, it knew full well the significance of the order and the precise purpose which it served, namely, the qualifying of the association to conduct the inquiry. This knowledge may fairly be inferred from the sequence in time

and logic of the communication from the Chief Justice and the order of recognition. Court direction and control were accomplished by the issue from time to time, under specific court order, of compulsory process and finally, under direct court order and under the seal of the court, of the subpœna addressed by specific wording to B. and others.

The statute provided a method of procedure which the court at its discretion might or might not adopt for the purpose of investigating into alleged unethical or improper conduct of attorneys and counselors-at-law. We can find no fault with that as an infraction upon the court's prerogative; nor may the statute be reasonably construed as having within its purview an inquiry into matters or for purposes other than those already mentioned. The court chose to adopt that method; no contrary inference may be drawn from the record. Members of the bar are such by privilege and that privilege is subject to conditions. If there is reason to believe that practices of an inhibited nature are extant, it is due to the courts, to the great body of honest lawyers and, above all, to litigants—the entire public, potentially, being such—that the facts should be known to the end that corrective measures may be taken.

The inquiry is general in character. It is conducted *in camera*. No disciplinary action is pending. The prosecutor of the rule is not under charges. No finding of guilt against the standards of the bar can be made against him without such charges and an opportunity to defend. No questions have been asked. We cannot anticipate that questions tending to criminate or disgrace the prosecutor will be asked of him, or that, if they be asked, he will claim privilege thereon. The fact that a witness may avoid an answer by claiming privilege does not make the question improper (*State* v. *Mohr,* 99 *N. J. L.* 124), and does not give the stamp of invalidity to the proceeding. It may very well happen that the prosecutor will deem it to his own interest as well as to the interest of society to assist the inquiry by giving all the information within his knowledge. We need not now consider to what, if any, extent the continued exercise of the

privilege of practicing is inconsistent with the claim of witness' privilege invoked by a member of the bar when interrogated in a court inquiry as to his professional acts. No proof has been adduced to sustain the prosecutor's contention that the books and documents demanded by the *duces tecum* are privileged communications from clients.

A question presented in the briefs is whether the subpœna served upon B. is effective to compel him to appear, produce and testify in accordance with the terms thereof. We think that it is. The immediate issue framed by the rule is whether the proceedings should be quashed. We find that the proceedings are within the purview of the statute, that they are not unconstitutional or otherwise unlawful and that consequently they should not be quashed.

The rule is discharged, with costs.