EX PARTE CHATTANOOGA BAR ASSOCIATION.

(*Knoxville*, September Term, 1959.)

Opinion filed December 11, 1959.

A. FRED REBMAN, III, W. A. WILKERSON and JOE V. WILLIAMS, JR., Chattanooga, for Bar Association.

H. JAMES HITCHING and W. NEIL THOMAS, JR., Chattanooga, amici curiae.

MR. CHIEF JUSTICE NEIL delivered the opinion of the Court.

The Chattanooga Bar Association filed its original bill in the Chancery Court of Hamilton County, the same being an Ex Parte action, invoking the inherent jurisdiction of the court to purge the legal profession of members who are, by their unethical and unlawful conduct, bringing reproach upon the court and the profession.

The petitioner is a non-profit membership corporation, organized under the laws of the State of Tennessee, whose members are qualified to practice in the Chancery Court as well as all other courts in Hamilton County.

The petition is signed and sworn to by officers and members of the Board of Governors of the Association and charges that while the great majority of attorneys "licensed to practice before your Honor's Court" conform to the legal and ethical standards required of their profession, "there is an increasing minority of attorneys (so licensed) who have been and are disregarding such requirements." It further charges: "During recent months an increasing number of complaints have been lodged with this committee, complaining primarily of, but not limited to, the following types of violations of law and of the legal ethics of the profession:

"1. Fomenting litigation and soliciting employment in both civil and criminal matters, which is done through direct personal contact with prospective

clients, by mail, through telephone communication, by agents and employees, or other persons or representatives acting in behalf of the soliciting attorney, and otherwise.

"2. Accepting employment in legal matters where a conflict of interests exists or where information confidentially obtained may be used in violation of the fiduciary relationship between lawyers and clients.

"3. Fee splitting with other attorneys where, because of a conflict of interests, the attorney obtaining a portion of the fee could not himself handle the case.

"4. Failure or refusal to account promptly and properly for funds obtained or held in a fiduciary capacity.

"5. Obtaining employment contracts, statements of witnesses, or other legal documents under duress, misrepresentation, or other circumstances where, through ignorance, disability or other cause the persons executing such instruments did not fully understand the consequence of their act.

"6. Contacting directly an adverse party represented by his own attorney.

"7. Other illegal or unprofessional conduct detrimental to the best interests of the public, the Courts and the legal profession."

Paragraph IV of the petition reads as follows:

"Your Petitioner believes and would show to the Court that the illegal and unethical practices heretofore referred to have increased to such an extent as to become open and notorious in the minds of the public,

not only in Hamilton County, but throughout the area, bringing into contempt and disrepute not only the vast majority of attorneys and judges whose conduct is in conformity with the highest standards of the legal profession but also to cause public distrust of the judicial processes and administration of justice in the county, to the detriment of the public welfare. Petitioner further believes and would show to the Court that its Grievance Committee, because of its limited authority as hereinbefore set out, is unable to stop the increasing number of illegal and unethical practices which are prevalent in Hamilton County, and that unless this honorable Court takes appropriate steps to control the conduct of those of its officers who are attorneys licensed to practice before the Court and engaging in such improper conduct, such practices will multiply to the increasing detriment of the public and the administration of justice in this county.''

The specific prayer for relief, based upon the foregoing averments in the petition are, as follows:

''*First:* That an investigation be ordered by this Court, to be conducted by itself or by such other appropriate procedure as it shall determine, in order that a judicial inquiry may be made into the practices hereinbefore alleged to exist and into any other illegal and improper practice.

''*Second:* That Special Masters be appointed by this Court for the purpose of conducting an inquiry into the unethical, unlawful and improper practices of attorneys in Hamilton County which are alleged in the petition to exist, or the existence of which may otherwise appear to the Court.

*"Third:* That such Special Masters be ordered to conduct such inquiries under the direction and control of this Court, inquiring into such matters and practices as may be referred to them by this Court for inquiry.

*"Fourth:* That for the purpose of conducting such inquiries the Special Masters appointed by this Court be vested with all powers and authority conferred by the laws of this state and the rules of this court upon Special Masters of this court, including but not limited to the power (1) to subpoena witnesses and compel the production of documents and other tangible things, (2) to administer oaths, and (3) to compel witnesses to give testimony under oath.

\* \* \* \* \* \*

*"Seventh:* That all persons called to give evidence, or otherwise appearing before the Special Masters appointed by the Court in this cause, be restrained from disclosing to any person, except this Court, any matter occurring or information obtained in the course of or arising out of such appearance unless authorized by order of this Court so to do."

Upon filing the petition the Chancellor entered the following order:

"In this cause it appearing to the Court that the complainant's ex parte petition prays for the appointment of Special Masters to investigate known misconduct of unnamed attorneys and that the proposed investigation will materially affect the rights of all members of the Chattanooga Bar as well as the general public, and the Court, being desirous of having all sides of this question fully briefed and argued, does

hereby appoint as amici curiae W. Neil Thomas, Jr., and H. James Hitching to assist and advise the Court in making research and briefing all principles of law controlling this cause.

"It is further Ordered that the amici curiae be authorized to file a motion to dismiss the original bill in this case upon such grounds as may appear proper to the amici curiae if in their judgment such action is right and proper.

"This order was made on the 16th day of March, 1959, and is entered nunc pro tunc. April 3, 1959."

A motion was duly filed by the appointed counsel to dismiss the petition on the ground that the court was without jurisdiction to receive and consider said petition because (1) no offending attorney was named or otherwise identified; (2) the court is without jurisdiction to order a general investigation into the conduct of attorneys; (3) the relief sought is foreign and unknown to the jurisdiction of the court; and (4) the jurisdiction for this type of petition is exclusively in the Supreme Court of Tennessee.

The Chancellor sustained the motion and dismissed the petition. From his decree counsel for petitioner prayed and were granted an appeal to this Court.

The petitioner challenges the correctness of the Chancellor's decree in the following assignment of error:

"The Chancellor committed prejudicial and reversible error in dismissing the petition and finding that the Chancery Court was without jurisdiction to entertain the petition and to grant the relief sought.

"This was error because the Court has inherent jurisdiction over the professional conduct of attorneys admitted to practice before the Court, such attorneys being officers of the Court and subject to the disciplinary powers of the Court."

Preliminary to our discussion and action upon the foregoing assignment it should be said that the opinions of the learned Chancellor are highly respected by the Bar and the members of this Court. The important question made on this appeal involves not only the honor and integrity of the Chancery Court of Hamilton County, the esteem in which it is held by the public generally, but it involves every other court as well. We must disagree with the Chancellor (1) that the Chancery Court is without inherent jurisdiction to hear and determine the issue, and (2) that this Court has exclusive jurisdiction of the said issue.

The *amici curiae* who advised with the Chancellor upon the issues, and who are representing his theory of the case in this Court, have done a good job, so to speak, and for their continued cooperation we express our appreciation.

There is no merit in the contention that the petition should be dismissed because no person or persons are named, or otherwise described, as offenders against the honor and dignity of the court or the legal profession. But the Chancery Court and all other courts in Hamilton County are named as victims of unethical practice by officers of the courts, and who are sworn to protect its power and authority. The petition portrays a condition which we are bound to accept as true. The proper administration of justice in the courts of this State is

paramount to all other matters, and requires the utmost vigilance by judges and officers alike to the end that its judgments and decrees bear no taint of dishonor. Considering the nature of the charges specifically pointed out in the petition the Chancellor must exercise his inherent authority to inquire as to who it is among many officers who are doing these dastardly things, and what judgments and decrees are affected thereby.

It would unduly prolong this opinion for us to discuss the authorities mentioned in the Chancellor's memorandum opinion, and distinguish them from the cases cited on the brief of counsel for the petitioner. The issue before us is not without precedent in jurisdictions other than Tennessee, where the courts have exercised their inherent jurisdiction in dealing with conditions similar to those described in the case at bar.

First of all we are not at all impressed with the suggestion that innocent persons may suffer by such unlimited investigation as is sought by petitioner in this case. To be sure there is a limitation upon the inherent authority of every court. But the courts must be trusted with complete authority, consistent with constitutional rights and privileges of all citizens, to protect its own honor from those who would prostitute its processes for unlawful personal gain.

■ Coming now to the determinative issue, i. e., the inherent jurisdiction of the Chancery Court to appoint special commissioners to investigate and inquire into unethical and unlawful practice of law, one of the leading cases which supports the petitioner's contention in all respects is *People ex rel. Karlin v. Culkin,* 248 N.Y. 465,

162 N.E. 487, 488, 60 A.L.R. 851. It is there held (Cardozo, Ch. J.) as follows:

"The court has power to direct a general inquiry into the conduct of its own officers, the members of the bar, and, in the course of that inquiry, to compel one of those officers to testify as to his acts in his professional relations, subject to his claim of privilege if the answer will expose him to punishment for crime, and provided the inquiry be a secret one in its preliminary stages."

The conditions which existed and which are reviewed by the court are not different from conditions alleged in the case at bar. As a result of these unlawful practices, Judge Cardozo says:

"* * * the poor were oppressed and the ignorant overreached. Retainers, often on extravagant terms, were solicited and paid for. * * * The helpless and the ignorant were made to throw their rights away as the result of inadequate settlements or fraudulent releases. * * *

\* \* \* \* \* \*

"* * * Co-operation between court and officer in furtherance of justice is a phrase without reality, if the officer may then be silent in the face of a command to speak. There are precedents of recent date, decisions in Wisconsin and Ohio, upholding the power of the court by a general inquisition to compel disclosure of the truth. *Rubin v. State,* 194 Wis. 207, 216 N.W. 513; Ohio Ct. of App., 26 Ohio Law Bull. 355, 515. Precedents far more ancient, their roots deeply set in the very nature of a lawyer's function, point the same way."

The historic development of the inherent power of the Court of Chancery in the matter of disciplinary action against offending attorneys, and other officers of the court, is ably and exhaustively discussed by the New York Court of Appeals, citing a long line of decisions by the English Courts. The opinion of the court affords interesting and instructive reading for members of the legal profession.

Other cases which are directly in point are the following: *In re Investigation by Bar Ass'n of Hudson County,* 109 N.J.L. 275, 160 A. 809; *In re Keenan,* 287 Mass. 577, 192 N.E. 65, 96 A.L.R. 679; and *In re Heirich,* 10 Ill.2d 357, 140 N.E.2d 825, 67 A.L.R.2d 827. Moreover the opinion of Judge Cardozo, supra, is cited with approval by our Court of Appeals in *Memphis & Shelby County Bar Ass'n v. Vick,* 40 Tenn App. 206, 290 S.W.2d 871.

Additional authority pertaining to the inherent power of the court is found in 5 Am.Jur. (Attorneys at Law), Section 250, page 411, as follows:

*"Preliminary Inquest*—The courts have inherent jurisdiction or power to conduct, antecedent to the institution of disbarment proceedings, a general investigation into the conduct and practices of attorneys whenever it is a quasi administrative remedy, without adverse parties plaintiff or defendant, the purpose of which is to collect and assemble facts and information which will enable the court to take such action as it may deem expedient for the public welfare. To this end the court may compel an attorney to testify to his professional acts, provided the inquiry is secret in its preliminary stages and is subject to the attorney's privilege against self-incrimination.''

The foregoing text is supported by numerous cases referred to in the footnotes, among which are *People ex rel. Karlin v. Culkin,* supra, and many others dealing with the same subject.

We do not understand that there is any disagreement with the insistence that the court has inherent jurisdiction, *independent of the statute,* in the matter of disbarment and discipline of attorneys. *State v. Bomar,* 179 Tenn. 67, 162 S.W.2d 515. In *Davis v. State,* 92 Tenn. 634, 23 S.W. 59, 61, after referring to a statute providing for a summary remedy by motion against an attorney, it is said:

"* * * But we do not understand this statute to restrict or affect in any way the inherent jurisdiction of all courts to deal with its officers in a summary way for malpractice or misconduct in their official character."

■ Contention is finally made that the Supreme Court has exclusive jurisdiction in the matter of disbarment proceedings, the same being evidenced by the adoption of Rule 40, 192 Tenn. 827. While the Court has acted in a few instances under this Rule, and has appointed members of the Bar to investigate charges lodged with the Chief Justice against an individual lawyer, we have never considered the said Rule as an exclusive remedy. It has never been thought of as denying to trial courts their inherent authority to discipline members of the Bar, or to entertain a motion by any lawyer, or any Bar Association, to investigate the unethical and unlawful practice of law.

In dealing with the important problem now before us we are continually reminded that the court must exercise its inherent power with due caution in order to safeguard the innocent from the evil minded, from personal hate and above all from the tongue of slander. But above all the court must act with courage to protect its own fair name as an institution where justice and honor reside and constitute the pole star of its life. This is paramount to all other issues.

We think the Chancellor was in error in dismissing the petition in this case. It is accordingly reversed and remanded with directions that Special Commissioners be appointed to conduct the investigation as prayed for under the strict supervision of the Chancellor. The said Commissioners may be residents of Hamilton County, or may reside in another Chancery Division, and shall have power to subpoena witnesses, said subpoena to issue as in all other cases. The findings of fact by the Commissioners shall be disclosed only to the Chancellor, who shall take such action, by citation or otherwise, as the disclosed situation may justify.

The petitioner must be adjudged to pay the cost of this proceeding, and it is so ordered.