IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
August 12, 2015 Session

## BAXTER BAILEY INVESTMENTS LLC v. APL LIMITED INC.

**Appeal from the Circuit Court for Shelby County**
**No. CT00289612      Gina C. Higgins, Judge**

_____

**No. W2015-00067-COA-R3-CV – Filed September 21, 2015**
_____


Plaintiffs, a debt collection company and a motor carrier, filed suit in general sessions court against defendant to collect unpaid transportation and delivery charges. Defendant filed a motion for summary judgment and a motion for sanctions against plaintiffs, arguing that plaintiffs continued to pursue their claims despite knowledge that defendant was not the proper defendant. Plaintiffs eventually voluntarily nonsuited their claim; however, defendants pursued their motion for sanctions. The general sessions court ordered plaintiffs to pay defendants' attorney's fees as sanctions. Plaintiff appealed the award of sanctions to the circuit court, and the circuit court modified the amount of sanctions awarded, but otherwise affirmed the award. On appeal, we reverse, holding the general sessions court did not have the authority to impose attorney's fees as sanctions.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Reversed**

J. STEVEN STAFFORD, P.J.,W.S., delivered the opinion of the Court, in which ARNOLD B. GOLDIN, J., and KENNY ARMSTRONG, J., joined.

Edgar Davison, Memphis, Tennessee, for the appellant, Baxter Bailey Investments, LLC.

Richard D. Bennett and Patrick G. Walker, Memphis, Tennessee, for the appellee, APL Limited, Inc.


**OPINION**

**Background**

Baxter Bailey Investments, LLC ("Baxter Bailey") is a company that is in the business of attempting to collect debts assigned to it by motor carriers. After being assigned a debt allegedly owed to the motor carrier Charlotte Bay Trading Company ("Charlotte Bay," together with Baxter Bailey, "Appellants"), Baxter Bailey, along with Charlotte Bay, filed a civil warrant in Shelby County General Sessions Court ("general sessions court") on October 13, 2011 against APL Limited, Inc. ("APL" or "Appellee"). Appellants included a Sworn Statement of Account of the amount of debt they allegedly owed, totaling $3,902.67. Appellants alleged that the "basis of the debt is charges incurred for the transportation and delivery of specified items, at the instance and request of said defendant."

After being served with process, APL questioned whether it was the proper defendant because it had no record of a business relationship with Charlotte Bay. APL subsequently contacted Baxter Bailey and requested documentation supporting the allegations in the civil warrant. Baxter Bailey's legal manager produced several documents, including invoices from Charlotte Bay to DDE Transportation Group, Inc. ("DDE"), in which Charlotte Bay sought payment from DDE;[1] and (2) an Equipment Inspection Form showing the condition of the containers picked up by Charlotte Bay for DDE, which includes the notation "ACCT: APL." Unsatisfied with Baxter Bailey's response to its initial request, APL wrote another letter on November 17, 2011 to Appellants' counsel again seeking additional information regarding the allegations in the civil warrant. Appellants did not respond to this request.

On December 9, 2011, APL filed a sworn denial of the amount sought by Appellants. Several days later, on December 15, 2011, counsel for APL sent another letter to Appellants requesting more information regarding the allegations in the civil warrant. Again, no response was forthcoming.

On January 24, 2012, APL filed a motion for summary judgment arguing that, as a matter of law, it was not responsible for the alleged debt to Charlotte Bay. According to APL, it was not the proper defendant because Charlotte Bay had actually contracted with DDE, and DDE was the entity, if any, that was indebted to Charlotte Bay. Attached to its motion for summary judgment, APL included several documents, including affidavits, supporting its position that it was not responsible for the debt. Still, Appellants continued to pursue their claims against APL.

On February 2, 2012, APL emailed a copy of a motion for sanctions to counsel for Appellants. APL indicated its intent to pursue sanctions against Appellants if they did not dismiss the lawsuit. According to APL, Appellants' conduct warranted sanctions because they were pursuing claims against APL without a reasonable basis that APL was the proper defendant. Counsel for Appellants responded, arguing that sanctions were unwarranted as

---

[1] The record indicates that DDE was a company that Charlotte Bay contracted with at some point to transport freight.

they believed APL was a proper defendant. On February 27, 2012, APL filed its motion for sanctions, arguing that the only basis Appellants had for the claims brought against APL was that the shipping containers in the transactions at issue were owned by APL and had APL's logo on the side. Appellants filed a response opposing the motion for sanctions. [2]

On March 29, 2012, the parties proceeded to trial in the general sessions court. Before trial began, APL requested that Appellants' case be dismissed and that sanctions be awarded based on the previously filed motions. The general sessions court stated it would defer hearing APL's requests until after Appellants put on proof. At this time, Appellants informed the general sessions court that they were voluntarily nonsuiting their claim against APL. Appellants asserted that a witness from Charlotte Bay was unable to attend and notified Appellants shortly before trial. Accordingly, Appellants decided to voluntarily nonsuit the case allegedly when they learned that the witness was unable to attend trial. APL did not dispute Appellants' request to nonsuit the lawsuit. The general sessions court eventually signed an order of dismissal with prejudice on June 6, 2012. [3]

Appellants' voluntary nonsuit of its claim against APL left only the issue of sanctions to be decided by the general sessions court. Although the court heard arguments from counsel on APL's motion for sanctions, the record does not indicate that the general sessions court conducted an evidentiary hearing on this issue. On April 9, 2012, counsel for APL submitted an affidavit regarding accrued attorney's fees.

On June 14, 2012, the general sessions court entered its written ruling in favor of APL on the issue of sanctions. It ordered Appellants to pay APL's attorney's fees as sanctions in the amount of $23,964.24. The court found that the sanctions were appropriate because Appellants had allegedly acted vexatiously and in bad faith in pursuing their claims against APL. In support of the sanctions, the general sessions court cited its inherent authority to impose sanctions and also ruled that the Tennessee Consumer Protection Act permitted sanctions in this case. Appellants timely appealed the general sessions court's order to the Circuit Court on June 22, 2012.

On June 27, 2013, over one year later, APL filed a brief asking the circuit court to affirm the general sessions court's award of sanctions against Appellants. Appellants responded on July 9, 2013. The circuit court, acknowledging the *de novo* standard of review applicable in appeals from the general sessions court, stated that it would view the facts as if it had the jurisdiction and authority of a general sessions court in order to determine whether

---

[2] Appellants retained their current attorney after APL filed its motion for sanctions. Their current attorney responded to the motions for sanctions and has represented Appellants on their appeal in the circuit court and to this Court.

[3] It is unclear from the record when the general sessions court's judgment regarding the dismissal was actually filed. There is no dispute, however, that Appellants' claim was dismissed.

the sanctions were proper. Pursuant to the circuit court's request, APL submitted its argument in the form of another motion for sanctions, so Appellants could respond. On February 24, 2014, APL filed its motion and memorandum. Appellants responded on March 24, 2014.

The Circuit Court heard the motion for sanctions on March 26, 2014. The circuit court permitted Appellants more time to supply additional evidence as to why they filed suit against APL at another hearing set for April 17, 2014. On April 17, 2014, the circuit court conducted an evidentiary hearing at which Appellants presented additional evidence. After this hearing, the circuit court permitted the parties to submit their closing statements in writing, both of which were filed May 9, 2014.

On October 21, 2014, the circuit court orally ruled in favor of APL. APL submitted an affidavit of attorney's fees in the amount of $24,015.71 incurred on appeal to circuit court, which were in addition to the $23,964.24 in attorney's fees awarded by the general sessions court. In total, APL alleged that it incurred $47,979.95 in attorney's fees by defending itself in the general sessions case and on appeal to the circuit court.

By written order entered December 16, 2014, however, the circuit court awarded APL $15,000.00 in attorney's fees as sanctions against Appellants. Finding that Appellants acted in bad faith because they lacked a basis for filing a claim against APL, the circuit court found that sanctions were warranted. The circuit court noted that it was "rely[ing] upon the authority available to the General Sessions Court instead of imposing the standard demanded by Tennessee Civil Procedure Rule 11 because the nature of APL's relief is contingent upon the [Appellants'] actions at the time of the Complaint's filing in the General Sessions Court." Appellants filed a timely appeal.

## Issue

As stated in their brief, Appellants raise the following issue: "[W]hether the Circuit Court erred by granting $15,000[.00] in sanctions against [Appellant] for filing this lawsuit."

APL presents an additional issue for review, as stated in its brief: "Whether the Circuit Court's award of attorneys' fees to [APL] should be modified to include the attorneys' fees awarded by the General Sessions court plus reasonable attorneys' fees for defending the claims in Circuit Court."

## Standard of Review

Although appellate courts review a trial court's decision to impose sanctions under an abuse of discretion standard, ***Pegues v. Ill. Cent. R. Co.***, 288 S.W.3d 250 (Tenn. Ct. App. 2008) (citing ***Alexander v. Jackson Radiology Assoc., P.A.¸*** 156 S.W.3d 11, 14 (Tenn. Ct. App. 2004)), the question of whether a court has the authority to award sanctions is a question of law. *See **Shofner v. Shofner***, 232 S.W.3d 36, 38 (Tenn. Ct. App. 2007). The

4

standard of review for questions of law is *de novo* without a presumption of correctness afforded to the trial court's conclusions of law. **Blair v. Brownson**, 197 S.W.3d 681, 684 (Tenn. 2006).

## Discussion

Before proceeding to the merits of this appeal, we must first acknowledge the unusual procedure the circuit court undertook before deciding Appellants' appeal from the general sessions court's order. Here, the circuit court was tasked with determining whether the general sessions court erred in awarding sanctions to APL due to Appellants' allegedly vexatious conduct. Rather than simply deciding this matter, the trial court took the unusual step of requiring APL to file a new motion for sanctions in the circuit court and putting itself into the position of the general sessions court to decide the newly-filed motion. Regardless of the procedure utilized by the trial court in this case, the dispositive issue on appeal concerns whether the general sessions court had authority to award sanctions in the form of attorney's fees to APL. If the general sessions court did not have the authority, the award of sanctions, and therefore, the circuit court's decision, was in error. Furthermore, because the allegedly vexatious conduct occurred in the general sessions court, and because APL never pursued Rule 11 sanctions for conduct in the circuit court,[4] the fact that the circuit court has authority to award sanctions is insufficient to salvage the award.

In order to determine whether the circuit court erred in affirming the general sessions court's award of attorney's fees as sanctions, we must analyze the propriety of the general sessions court's order. To this end, we must distinguish between sanctions and attorney's fees; they are not synonymous. In certain situations, a trial court may award sanctions that do not represent attorney's fees, or attorney's fees that are not based upon sanctionable conduct. The parties cite law with regard to both sanctions and attorney's fees in their appellate briefs. Specifically, Appellants argue that the award of attorney's fees as sanctions violates the American Rule. Under the American Rule, each party is responsible for its own attorney's fees, and a party in a civil action may recover attorney's fees only if such recovery is

---

[4] For purposes of this Opinion, it is important to note that APL did not seek sanctions pursuant to Rule 11 for Appellants' conduct in the circuit court. In its motion to the circuit court, APL specifically stated that Appellants' allegedly vexatious conduct should be "viewed under the circumstances as they existed when the Civil Warrant [in general sessions court] was signed." Thus, although APL did reference Rule 11 in its motion to the circuit court, it only sought sanctions for Appellants' conduct and filings in the general sessions court.

Thus, without any indication that APL alleged sanctionable conduct in the circuit court, and without any indication that it comported with the procedure of Rule 11 in seeking sanctions for that conduct, *see* Tenn. R. Civ. P. 11.03, we decline to address whether sanctions would have been appropriate in light of Appellants' conduct on appeal to the circuit court. *See* **Brady v. Valentine**, No. 01-A-019707CV00308, 1998 WL 83746 (Tenn. Ct. App. Feb. 27, 1998) (concluding that, after an appeal by the plaintiff from general sessions court, defendant could pursue Rule 11 sanctions where the defendant specifically alleged that the appeal to circuit court, and not just the filings in general sessions court, was frivolous and warranted sanctions).

provided for by statute or by a contract between the parties. ***Taylor v. Fezell***, 158 S.W.3d 352, 359 (Tenn. 2005); ***Fifth Third Co. v. Mooreland Estates Homeowners Ass'n***, 639 S.W.2d 292, 298 (Tenn. Ct. App. 1982). APL, on the other hand, argues that the general sessions court's inherent authority trumps the American Rule when the court has found sanctionable conduct. In a somewhat similar case involving the court's ability to award attorney's fees as a punishment for criminal contempt, this Court held that "the general rule is that absent a statute, contract, or recognized ground of equity, there is no inherent right to have attorneys' fees paid by the opposing party." ***Butler v. Butler***, No. 02A01-9409-CH-00218, 1995 WL 695123, at *3 (Tenn. Ct. App. Nov. 21, 1995) (citing ***State ex rel. Orr v. Thomas***, 585 S.W.2d 606 (Tenn. 1979)). Accordingly, the Court looked to relevant statutes, caselaw, and other recognized grounds to determine whether the award of attorney's fees was an appropriate sanction. Consequently, we must do the same.

## Authority to Sanction

In order to determine whether the general sessions court has the authority to sanction litigants, we first look to whether the Legislature has expressly granted such authority. General sessions courts are creatures of statute, *see* Tenn. Code Ann. § 16-15-101 *et seq*., and their authority is derived therefrom. ***Id.***; *see also* ***R & F Enters., Inc. v. Penny***, No. E2009-00007-COA-R3-CV, 2010 WL 62048 (Tenn. Ct. App. Feb. 22, 2010). Thus, we must analyze whether, in this case, the general sessions court was given any statutory authority to impose sanctions against Appellants.

Although not relied on by the general sessions court in its order, Tennessee Code Annotated Section 16-15-401(a) provides: "Each general sessions court judge is vested with power to . . . [p]unish persons disturbing them [sic] in the discharge of their [sic] official duties." Tenn. Code Ann. § 16-15-401(a)(8). APL argues, in its brief to this Court, that this provision affords the general sessions court the authority to issue discretionary awards, including sanctions as in this case. Despite its reference to Section 16-15-401(a)(8) on appeal, APL did not argue before the general sessions court that this statute authorized it to impose sanctions in the form of attorney's fees. The general sessions court, therefore, did not rely upon Section -401(a)(8) in its final order imposing sanctions. Unsurprisingly, APL also did not reference Section -401(a)(8) in its memorandum seeking the circuit court's affirmance of the sanctions.[5] Still, on appeal to this Court, APL argues that Tennessee statutory law and caselaw are clear that the general sessions court has the authority to impose discretionary awards, such as sanctions. We disagree for several reasons.

---

[5] Typically, issues not raised in the trial court may not be raised for the first time on appeal. ***Wilson v. Esch***, 166 S.W.3d 729, 730 (Tenn. Ct. App. 2004) (citing Taylor ***v. Beard***, 104 S.W.3d 507, 511 (Tenn. 2003)). However, because this is an issue of first impression, we feel compelled to address the implication of Section 16-15-401(a)(8) on the circumstances of this case.

First, the history of the general sessions court demonstrates that its jurisdiction and authority is limited. The Tennessee Supreme Court in ***Ware v. Meharry Medical College***, 898 S.W.2d 181 (Tenn. 1995) explained that the general sessions courts "first appeared in Tennessee over fifty years ago when the General Assembly, responding to the growing popular dissatisfaction with the justice of the peace courts, began creating general sessions courts by private act." ***Id.*** at 183 (citing James G. France, *Effective Minor Courts: Key to Court Modernization*, 40 Tenn.L.Rev. 29, 41 (1972); Paul M. Bryan & Isadore B. Baer, *General Sessions Courts: Origin and Recent Legislation*, 24 Tenn.L.Rev. 667, 667–68, 684–85 (1956)). The general sessions courts retained many of the characteristics of the justice of the peace courts. ***id.***, "and thus they provide many of the same informal procedures used in the justice of the peace courts." ***Id.*** (citing ***Spencer v. Dixie Fin. Co.***, 205 Tenn. 485, 488, 327 S.W.2d 301, 302 (1959)). However,

> [d]espite the growth of their authority, general sessions courts remain courts of limited jurisdiction. ***City of Knoxville ex rel. Roach v. Dossett***, 672 S.W.2d 193, 195 (Tenn. 1984); ***State ex rel. Boone v. Torrence***, 63 Tenn.App. 224, 242, 470 S.W.2d 356, 364 (1971), whose authority depends upon the nature and amount of the dispute. Sam R. Gilreath & Bobby R. Aderholt, *Caruthers' History of a Lawsuit* § 511, at 584 (8th ed. 1963). Their judgments cannot exceed their jurisdictional limits or their subject matter jurisdiction. ***Harris v. Hadden***, 75 Tenn. 214, 216 (1881); ***Houser v. McKinnon***, 60 Tenn. 287, 288 (1872); ***Morrow v. Calloway***, 8 Tenn. (1 Martin & Yer.) 240, 241 (1827).

***Ware***, 898 S.W.2d 181, 183–84 (Tenn. 1995) (footnotes omitted). Furthermore, the "concern[s] about the quality of justice dispensed by the justice of the peace courts also carried over to the general sessions courts" for various reasons, including:

> (1) the courts' informal procedures, (2) the justices' lack of formal legal training, (3) the absence of a jury, (4) the high incidence of default judgments, and (5) the taint of the fee-based system for compensating justices. The perception that general sessions courts' judgments are fragile continues even though general sessions court judges now receive fixed salaries.

***Id.*** at 184 (footnote omitted). To assuage these concerns and protect litigants from erroneous judgments, the General Assembly promulgated procedural safeguards precluding the general sessions courts from exercising too broad a power.

The Tennessee General Assembly has limited the general sessions court's powers by providing that the Tennessee Rules of Civil Procedure do not apply to general sessions courts except in very limited circumstances. Tenn. R. Civ. P. 1 ("The Rules of Civil Procedure shall not apply to general sessions courts . . . ."). The Tennessee Rules of Civil Procedure include a specific rule, Rule 11, which permits courts to impose sanctions against attorneys, law firms, *pro se* litigants, or parties who make representations to the court for an improper purpose, frivolously, or without reasonable investigation into their evidentiary support. *See* Tenn. R. Civ. P. 11.02. As stated above, however, Rule 11 does not apply to the general sessions court. Clearly, the General Assembly did not intend for the general sessions court to impose sanctions pursuant to Rule 11. If the legislature intended for the general sessions court to have the authority to sanction, it could have specifically provided the general sessions court this authority. Indeed, the legislature has provided that at least one rule of civil procedure should apply in general sessions court. *See* Tenn. R. Civ. P. 1 ("Rule of Civil Procedure 69 governing execution on judgments shall apply to civil judgments obtained in general sessions courts."). Without any expressed intent on behalf of the legislature, we must conclude that the legislature did not intend for the general sessions court to have the authority to award sanctions pursuant to Rule 11.[6]

Next, Tennessee caselaw is similarly devoid of any authority that provides that a general sessions court may impose sanctions in the form of attorney's fees absent a finding of contempt.[7] Instead, the general sessions court's authority to "punish," as provided in Section -401(a)(8), has only been interpreted within the contempt context. *See **State ex rel. May v. Krichbaum***, 278 S.W. 54 (Tenn. 1925) (holding that the predecessor statute to Section 16-15-401 permitted justices of the peace to punish persons using their contempt power). Indeed, in ***Krichbaum***, the Tennessee Supreme Court concluded that a justice of the peace was entitled to "punish 'the willful misbehavior of any person in the presence of the court, or so near thereto as to obstruct the administration of justice.'" *Id.* at 55. Thus, the ***Krichbaum*** Court concluded that the predecessor of Section -401(a)(8), which is identical in language to Section -401(a)(8), conferred authority to the general sessions court to hold persons in contempt if necessary. Additionally, there is no shortage of caselaw acknowledging the general sessions court's authority to hold persons in contempt. *E.g.*, ***Metro. Gov't of***

---

[6] Recognizing this fact, neither the general sessions court nor the circuit court relied on Rule 11 to justify the award of sanctions in this case. We include a discussion of Rule 11 as an acknowledgement that the General Assembly has chosen to exclude the power to sanction under Rule 11 from the general sessions court's authority.

[7] Tennessee Code Annotated Section 16-15-713 provides that "courts of general sessions have the power to issue attachments and inflict punishments for contempts of court." However, nothing in the record indicates that APL filed a motion to have Appellants held in contempt. Further, nothing in the general sessions court's order indicates that it found Appellants in contempt.

*Nashville v. Printer's Alley Theater, LLC*, No. M2007-00329-COA-R3-CV, No. M2007-00391-COA-R3-CV, 2008 WL 199849 (Tenn. Ct. App. Jan. 23, 2008), *perm. app. denied* (Tenn. Sept. 29, 2008); *State v. Wood*, 91 S.W.3d 769 (Tenn. Ct. App. 2002); *State v. Johnston*, No. E2002-02028-CCA-R3-CD, 2003 WL 23094414 (Tenn. Crim. App. Dec. 30, 2003); *State v. Gray*, 46 S.W.3d 749, 750 (Tenn. Ct. App. 2000). On the contrary, our research has not revealed any authority expressly providing that the general sessions court has any authority to impose sanctions.

Accordingly, we decline to hold that Tennessee Code Annotated Section 16-15-401(a)(8) authorizes the award of sanctions in this case. This conclusion comports with the history of the general sessions court, the inapplicability of certain sanctioning rules, and the dearth of caselaw providing that the general sessions court has such authority to sanction. Our conclusion as to the lack of statutory authority, however, does not end our inquiry. As stated above, our analysis is two-fold. In the absence of explicit statutory authority, we next consider whether the general sessions court's inherent authority authorized the award of sanctions in this case.

**Inherent Authority**

In its order, the general sessions court relied upon its inherent authority to supervise and control its proceedings in imposing an award of attorney's fees as sanctions against Appellants. The general sessions court concluded that "all Courts, when harm is shown, have [i]nherent powers to fashion remedies so long as those remedies do not conflict with laws promulgated by the legislative branch of our governance, or legal precedence." The court reasoned that its inherent power to "control proceedings" permitted it to sanction Appellants for allegedly acting in bad faith by pursuing the claim against APL. On the contrary, Appellants argue that the general sessions court's reliance on its inherent authority contravenes the American Rule.

It is well-settled that Tennessee courts are afforded broad inherent authority over their court proceedings. *See* ***Hodges v. Attorney Gen.***, 43 S.W.3d 918, 921 (Tenn. Ct. App.). However, there is a limitation on the inherent authority of every court. ***Ex Parte Chattanooga Bar Ass'n***, 330 S.W.2d 337, 342 (Tenn. 1959). Furthermore, "[w]e are continually reminded that the court must exercise its inherent power with due caution[.]" Indeed, the extent of the trial court's inherent authority has been a subject of much scholarly debate. *See generally* Felix F. Stumpf, *Inherent Powers of the Courts* 1 (1994) (noting that while the inherent power of the courts has been extensively exercised, "learned writers have described the concept as ... 'a problem of definition that has eluded or bedeviled many courts and commentators for years'") (quoting Stephen B. Burbank, *Sanctions in the Proposed Amendments to the Federal Rules of Civil Procedure: Some Questions About Power,* 11 Hofstra L.Rev. 997, 1004 (1983)). To be sure, Tennessee courts have inherent power to

9

control their own dockets, *see State v. Benn,* 713 S.W.2d 308, 310 (Tenn.1986), to enforce their judgments, *see State ex rel. Stall v. City of Knoxville,* 365 S.W.2d 433, 435 (Tenn. 1963), and to punish for contempt. *See Baker v. State,* 417 S.W.3d 428, 435 (Tenn. 2013). It is important to note, however, that a "court's inherent powers do not increase its jurisdiction; rather they include only those powers that are necessary to the court's existence and to the effective and orderly exercise of its jurisdiction." 20 Am. Jur. 2d *Courts* § 36.

With the foregoing in mind, we analyze the general sessions court's conclusion that it had the inherent authority to award attorney's fees as sanctions. For this proposition, the general sessions court points to two cases, *Oliveri v. Thompson*, 803 F.2d 1265 (2d Cir. 1986) and *Andrews v. Bible*, 812 S.W.2d 284 (Tenn. 1991). We address each case in turn.

The general sessions court first relies upon *Oliveri v. Thompson*, 803 F.2d 1265 (2d Cir. 1986). In *Oliveri*, a federal circuit court of appeals case analyzed a district court's authority to award attorney's fees as sanctions. The plaintiff arrestee brought suit against various government officials for, *inter alia*, unconstitutional arrest and use of excessive force. *Id.* at 1276–77. A jury found in favor of the defendants. *Id.* at 1270. Shortly after trial, defendants jointly moved for sanctions against plaintiff and his attorney. *Id.* at 1270. The district court granted the motion, awarding attorney's fees as sanctions under several federal statutes permitting the fees. *Id.* at 1271. Relevant to the case-at-bar, however, is the *Oliveri* Court's discussion of whether the district court had the inherent authority, aside from the statutory authority, to impose the sanctions.[8]

The *Oliveri* Court opined that courts have an inherent authority "to supervise and control their own proceedings." Furthermore, according to *Oliveri*, "an exception to the American Rule has evolved which permits the court to award a reasonable attorneys' fee to the prevailing party when the losing party has 'acted in bad faith, vexatiously, wantonly, or for oppressive purposes.'" *Id.* at 1272 (permitting the award to be made "against the losing party or against the attorney for the losing party").

Despite the foregoing language from *Oliveri*, we are not persuaded that it is sufficient to support a determination that the general sessions court has an inherent authority to award attorney's fees as sanctions. To begin, the *Oliveri* decision is a federal appellate case, which is not binding on this Court. *Townes v. Sunbeam Oster Co.*, 50 S.W.3d 446, 452 (Tenn. Ct. App. 2001) (citing *State ex rel. Elvis Presley Int'l Mem'l Found. v. Crowell*, 733 S.W.2d 89, 97 (Tenn. Ct. App. 1987)). Federal caselaw is merely persuasive authority. *Harris v. Chern*, 33 S.W.3d 741 (Tenn. 2000).

---

[8] Although it acknowledged that the statutes at issue permitted an award of attorney's fees as sanctions, the court in *Oliveri* ultimately reversed the district court's decision to award sanctions.

Although we may rely on federal caselaw for guidance in certain situations, we decline to do so here because the facts of *Oliveri* render it inapposite to the case-at-bar. Notably, the *Oliveri* Court opined on the concept of inherent authority as it pertained to a federal district court, which is a court of record. *See Oliveri*, 803 F.2d at 1271; *Postmaster General of U.S. v. Trigg*, 36 U.S. 173 (1837) ("The district court . . . is a court of record."). Courts of record are defined as courts "where the acts and judicial proceedings are enrolled in parchment for perpetual memorial and testimony." *Howard v. State*, 399 S.W.2d 738, 740 (Tenn. 1966). Unlike federal district courts, the general sessions court in Tennessee is not a court of record. *See Weaver v. Cromer*, 392 S.W.2d 835 (Tenn. 1965); *Spencer v. Dixie Finance Co.*, 327 S.W.2d 301 (Tenn. 1959). The statute establishing the general sessions court, Tennessee Code Annotated § 16-15-101 *et seq.*, does not provide for the keeping of records for proceedings, and accordingly, it has become well-accepted in Tennessee that general sessions courts are not courts of record. Even more importantly, unlike the district court in *Oliveri*, the general sessions court is not a court with a broad type of jurisdiction, *Cagle v. Cass*, No. W2001-00760-COA-R3-CV, 2001 WL 792644, at *2 (Tenn. Ct. App. July 6, 2001) ("General sessions courts are courts of limited jurisdiction. Their authority depends upon the nature and amount of the dispute and their judgments cannot exceed their jurisdictional limits or their subject matter jurisdiction.") (citations omitted). For purposes of analogizing, the *Oliveri* Court's opinion applies to a federal district court, which is similar in function and authority to a circuit or chancery courts at the state level. Clearly, a general sessions court is more limited in authority and jurisdiction than a circuit or chancery court in Tennessee. *Compare* Tenn. Code Ann. § 16-15-101 *et seq.* (establishing the general sessions court and providing jurisdictional limits), *with* Tenn. Code Ann. § 16-11-101 *et seq.* (providing the powers, privileges, and jurisdiction of the chancery court), Tenn. Code Ann. § 16-10-101 *et seq.* (providing that the "circuit court is a court of general jurisdiction") *and* Tenn. Code Ann. § 16-11-102 (providing that the chancery court has concurrent jurisdiction with the circuit court). Thus, we are not persuaded that the concept of inherent authority as described in *Oliveri* is fully applicable to the general sessions court in this case.[9]

---

[9] We note, however, that even if *Oliveri* applied to the general sessions court in this case, *Oliveri* imposes a heightened standard on courts imposing sanctions using their inherent authority as opposed to imposing sanctions through another mechanism, such as a statute. Because of the "very potency" of a court's inherent power, it should be exercised with "restraint and caution." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991). The *Oliveri* Court opined that courts relying on their inherent authority must do so carefully:

> To ensure, however, that fear of an award of attorneys' fees against them will not deter persons with colorable claims from pursuing those claims, we have declined to uphold awards under the bad-faith exception absent both "'clear evidence' that the challenged actions 'are entirely without color, and [are taken] for reasons of harassment or delay or for other improper purposes'" and "a high degree of specificity in the factual findings of [the] lower courts."

11

The general sessions court also found that *Andrews v. Bible*, 812 S.W.2d 284 (Tenn. 1991) supported its exercise of inherent authority in this case. In *Andrews*, the defendants moved for Rule 11 sanctions against the plaintiff and her attorney after the plaintiff voluntarily nonsuited her worker's compensation action. *Id.* at 285. The trial court denied defendants' motion for sanctions. On appeal to the Tennessee Supreme Court, the issues discussed by the Court were (1) whether plaintiff's counsel conducted a sufficient investigation before filing suit in compliance with Rule 11, and (2) whether Rule 11 requires attorneys to take remedial action if they discover that a pleading, motion, or other paper is "ungrounded factually or [] legally meritless." *Id.* Thus, the Supreme Court's discussion focused on the trial court's decision regarding Rule 11. The Court ultimately held that counsel conducted a sufficient investigation before filing suit and that counsel did not have a continuing obligation to take remedial action under Rule 11.[10] The concept of inherent authority, however, only appears in the *Andrews* Opinion in dicta.

The general sessions court focused on the following language from *Andrews*: "Completely aside from Rule 11, the courts of this state have, under the inherent power to supervise and control their own proceedings, the authority to sanction attorneys, but only for pursuing matters in bad faith or conducting themselves in a reckless manner." *Id.* at 291. Still, we respectfully disagree that *Andrews* stands for the proposition that the general sessions court has the inherent authority to award attorney's fees as a sanction against a litigant for several reasons. First, the *Andrews* case analyzed whether sanctions could be imposed against an attorney, not against a party. *See, e.g.*, *id.* (stating that courts have "the authority to sanction attorneys"). This discussion in *Andrews* reaffirmed a well-established point of law that the judicial branch has the inherent authority to govern the practice of law

_____

*Oliveri*, 803 F.2d at 1272 (citing *Dow Chemical Pacific Ltd. v. Rascator Maritime S.A.*, 782 F.2d 329, 344 (2d Cir. 1986); *Weinberger v. Kendrick*, 698 F.2d 61, 80 (2d Cir. 1982); *Nemeroff v. Abelson*, 620 F.2d 339, 348 (2d Cir. 1980); *Browning Debenture Holders' Comm.*, 560 F.2d 1078 (2d Cir. 1977)). Here, the record (including the general sessions court's order) does not indicate that an evidentiary hearing was conducted before the general sessions court imposed the sanctions on Appellants. Thus, even if we were persuaded that *Oliveri* could be interpreted as applying to the general sessions court, the general sessions court failed to issue findings that clear and convincing evidence supported the award of sanctions. *See also* *Quadrozzi v. City of New York*, 127 F.R.D. 63, 83–84 (S.D.N.Y. 1989) ("'[C]lear evidence' that plaintiffs willfully abused the judicial process is lacking and, thus, the Court will not award sanctions . . . under the Court's inherent power.") (citing *Oliveri*, 803 F.2d at 1272).

[10] Rule 11 was amended subsequent to the *Andrews* case in 1995. The new rule expanded an attorney's obligation under the rule to include "signing, filing, submitting, or later advocating." Tenn. R. Civ. P. 11.02. Thus, counsel and *pro se* litigants are under a continuing obligation to verify the factual and legal bases of presentations made to the court. *See* *Evans v. Evans*, M2010-00079-COA-R3-CV, 2010 WL 3715977 (Tenn. Ct. App. Sept. 22, 2010).

and sanction attorneys for acting in a reckless manner. *See Petition of Burson*, 909 S.W.2d 768, 773 (Tenn. 1995) (opining that the Tennessee Supreme Court has the inherent supervisory power to regulate the practice of law); *Wright v. Quillen*, 909 S.W.2d 804, 814 (Tenn. Ct. App. 1995) ("Courts have the inherent power to supervise and control their own proceedings and to sanction attorneys for conducting themselves in a reckless manner."). To this end, we observe that *Andrews* does not apply the concept of inherent authority in the context of an award of sanctions against the litigants, as we must do in the instant case. *See id.* at 291. Our conclusion that *Andrews* applies only to the sanctioning of attorneys, and not parties, is supported by the court's explanation of the purpose of inherent authority:

> We note in this regard that it has traditionally been the province of the courts to set standards for the bar and that an attorney acts not only as a client's representative, but also as an officer of the court and, accordingly, has a duty to serve both masters. *Business Guides* [*Inc. v. Chromatic Comm'ns Enters., Inc.*], 111 S.Ct. [922], 940 [(U.S. 1991)]. "Disciplinary powers which English and American courts have for centuries possessed over members of the bar [are] incident to their broader responsibility for keeping the administration of justice and the standards of professional conduct unsullied." *Id.*

*Id.* The foregoing demonstrates that *Andrews* concerns sanctions against attorneys, and not parties themselves. There is simply no language in *Andrews* that authorizes the use of inherent authority by a general sessions court to impose attorney's fees as sanctions against parties as it did in the case-at-bar.[11]

Additionally, and equally important, *Andrews* is not reviewing the issue of sanctions in the context of a court of limited jurisdiction, i.e. the general sessions court, as we must do in this case. *See Cagle v. Cass*, 2001 WL 792644, at *2. Albeit in dicta, the *Andrews* opinion discussed the inherent authority of the circuit court, *see Andrews*, 812 S.W.2d at 291 (discussing the potential use of the circuit court's inherent authority to award attorney's fees as sanctions, although not decisive to the issue on appeal in that case), a court of record and a court of general jurisdiction. Tenn. Code Ann. § 16-10-101 *et seq.* (providing that the "circuit court is a court of general jurisdiction"); *see Page v. Turcott*, 167 S.W.2 350 (Tenn. 1943). We have already concluded that *Oliveri*'s discussion of inherent authority as applied to a federal district court is unpersuasive as applied to the general sessions court here. *See*

---

[11] The general sessions court's intent to only impose sanctions on Appellants and not their counsel is apparent in a letter attached to the court's written judgment. The letter stated, "I thank you both for your professionalism in your presentation of law which concerned this Court, and look forward to your next appearance before this Court. Both of you epitomize my definition of 'Officers of the Court' and, as such, good lawyers make 'good Judges better'."

discussion *supra*. We similarly find ***Andrews***'s discussion on inherent authority as applied to circuit court inapposite to the case-at-bar because of the jurisdictional differences between both courts. Therefore, it was error for the general sessions court to rely upon inherent authority as opined on in ***Andrews*** in imposing sanctions against Appellants as parties.

Based on the foregoing, we respectfully disagree that the general sessions court's inherent authority authorizes the award of sanctions in this case. Neither ***Oliveri*** nor ***Andrews*** support the use of inherent authority on the facts presented in this case. Our research has revealed no other caselaw, federal or from our sister states, that would otherwise permit a general sessions court to rely upon its inherent authority when imposing attorney's fees as sanctions. Furthermore, in light of our conclusion that the general sessions court has no statutory power to impose sanctions, a conclusion that it has no inherent authority to do so follows therefrom. *See* 20 Am. Jur. 2d Courts § 36 ("A court's inherent judicial powers originate from the duties and responsibilities that the constitution has created and delegated to the court; they are administrative powers, not jurisdictional powers."). Accordingly, we conclude that the general sessions court erred in finding it had the inherent authority to impose attorney's fees as sanctions.

### Tennessee Consumer Protection Act

Finally, we turn to the last basis relied upon by the general sessions court. The general sessions court relied upon a statutory basis in imposing attorney's fees as sanctions. An exception to the American Rule exists in that attorney's fees may be awarded where provided by statute. The Tennessee Legislature has codified numerous statutes permitting the recovery of attorney's fees to certain parties. *E.g.*, Tenn. Code Ann. § 36-5-103(c) (permitting plaintiff spouse to recover attorney's fees from defendant spouse incurred in, *inter alia*, enforcing any decree for alimony and/or child support); Tenn. Code Ann. § 20-12-119(c)(1) ("[W]here a trial court grants a motion to dismiss pursuant to Rule 12 of the Tennessee Rules of Civil Procedure for failure to state a claim upon which relief may be granted, the court shall award the party or parties against whom the dismissed claims were pending at the time the successful motion to dismiss was granted the costs and reasonable and necessary attorney's fees . . . ."); Tenn. Code Ann. § 36-5-121(d)(5) ("Alimony in solido may be awarded . . . to provide support, including attorney fees, where appropriate."); Tenn. Code Ann. § 29-27-121 (permitting a court to order the fees of the attorney of either party to be paid out of the common fund where property is sold for partition); Tenn. R. Civ. P. 37.01 (permitting a party to recover reasonable expenses, including attorney's fees, after bringing a motion to compel discovery). Accordingly, we must determine whether there is a statutory exception permitting an award of attorney's fees against Appellants in this case.

The general sessions court relied upon the Tennessee Consumer Protection Act ("TCPA"), which permits the recovery of attorney's fees when a violation is found by the

court. Tenn. Code Ann. § 47-18-109(e)(1), (2). The court noted that the TCPA protects consumers and "legitimate business enterprises," including APL in this case, from "those who engage in unfair or deceptive acts or practices in the conduct of any trade or commerce in part or wholly within this State." *See* Tenn. Code Ann. § 47-18-102(2). The general sessions court found that Appellants violated the TCPA by engaging in "a practice of filing lawsuits wantonly, vexatiously, indeed with ill motives, and, further, that this *practice* is unquestionably unfair." Specifically, the general sessions court found Appellants had violated Section 47-18-104, a provision stating that unfair or deceptive acts concerning commerce are Class B misdemeanors. Accordingly, the court found that the TCPA also supported its imposition of attorney's fees as sanctions against Appellants.

Before we can address whether the TCPA may serve as a basis for the award of attorney's fees in this case, we must ensure it was properly raised before the general sessions court. It is inappropriate for a court to rule on matters not raised by the parties in their pleadings or motions and replies thereto, "absent trial by consent." ***Randolph v. Meduri***, 416 S.W.3d 378, 384, 385 (Tenn. Ct. App. 2011). "Under modern practice, as well as at common law, a plaintiff cannot sue on one cause of action and recover on another." ***Id.*** (quoting Am.Jur.2d *Pleading* § 925 (2d ed. 1999)). Stated another way, it is inappropriate for a court to create a claim where none exists. *E.g.*, ***Dobbs v. Guenther***, 846 S.W.2d 270, 273 (Tenn. Ct. App. 1992). A trial court commits error when it bases a decision, even in part, upon conclusions concerning an issue that was not raised in the pleadings or tried by consent. ***Rawlings v. John Hancock Mut. Life Ins. Co.***, 78 S.W.3d 291, 300 (Tenn. Ct. App. 2001); *but see* ***Ingram v. Wasson***, 379 S.W.3d 227 (Tenn. Ct. App. 2011) (noting that a court may consider its own jurisdiction *sua sponte*, even if it is not raised by the parties). Judgments awarded outside of the scope of the requested relief are typically void. ***Id.*** (citing ***Brown v. Brown***, 281 S.W.2d 492, 497 (Tenn. 1955)). The policy behind this rule is that "since the purpose of pleadings is to give notice to all concerned regarding what may be adjudicated, a judgment beyond the scope of the pleadings is beyond the notice given the parties and thus should not be enforced." ***Brown***, 281 S.W.2d at 497.

Here, despite the general sessions court's findings and conclusions concerning the TCPA, the record reveals that APL never filed a claim seeking damages pursuant to the TCPA.[12] Additionally, APL did not reference the TCPA in any of its filings to the general sessions court, including its motions for summary judgment and for sanctions. The first time the TCPA appears in the record is in the general sessions court order. We decline to allow the TCPA to "serve as a basis of [the] judgment in favor of [APL] absent trial by consent." *See*

---

[12] The general sessions court's order provides that the application of the TCPA to the issue before the general sessions court was raised at oral argument. However, it did not indicate who raised the TCPA or whether Appellants consented to try this issue without proper notice. Moreover, neither party addresses the TCPA as a basis for sanctions in their appellate brief to this Court. Accordingly, we decline to conclude that the TCPA properly served as a basis for the award of sanctions/attorney's fees in this case.

***Rawlings v. John Hancock Mut. Life Ins. Co.***, 78 S.W.3d 291, 300 (Tenn. Ct. App. 2001). The first and only opportunity for Appellants to respond to the TCPA issue was after the general sessions court had entered its order. As such, Appellants were afforded no notice or opportunity to defend its business practices from being scrutinized pursuant to the TCPA before entry of the court's judgment. *See **Brown***, 198 S.W.2d at 497. We conclude that it was improper for the trial court to rely on the TCPA as a statutory exception to the American Rule because it was never pleaded before the general sessions court.

Because Tennessee follows the American Rule with regard to attorney's fees, unless the trial court properly relies on a statute, agreement, or recognized ground of equity under which an award of attorney's fees is permitted, the litigants are required to pay their own attorney's fees. ***State ex rel. Orr v. Thomas***, 585 S.W.2d 606, 607 (Tenn. 1979) (holding that the rule in Tennessee is well-established that no party is entitled to award of attorney's fees in absence of statute, contract, or recognized ground of equity so providing). As previously discussed, however, the power of a general sessions court to award attorney's fees as a sanction for allegedly vexatious conduct has no specific basis in statute and has never been recognized in Tennessee. As found by this Court in a similar case: "There is no statute in this State requiring the losing party to pay the prevailing party's attorney[']s fees in a case such as this. To allow these fees without statutory authority would violate public policy." ***Butler***, 1995 WL 695123, at *3 (citing ***Owen v. Stanley***, 739 S.W.2d 782, 788 (Tenn. Ct. App. 1987); ***John J. Heirigs Constr. Co. v. Exide***, 709 S.W.2d 604, 609 (Tenn. Ct. App. 1986)). Because no specific basis for deviating from the American Rule exists in the instant case, the award of attorney's fees as sanctions was improper. Based on the foregoing, we reverse the judgment of the circuit court in affirming the award of attorney's fees as sanctions by the general sessions court. All other issues are pretermitted.[13]

### Conclusion

The judgment of the Shelby County Circuit Court is reversed. This cause is remanded to the trial court for all further proceedings as are necessary and are consistent with this Opinion. Costs of this appeal are taxed to Appellee APL, Limited, Inc. for all of which execution may issue if necessary.

_____
J. STEVEN STAFFORD, JUDGE

---

[13] In the conclusion section of its brief, APL requests this Court to award its attorney's fees and costs associated with defending this appeal. However, APL did not designate this as an issue in its statement of the issues. Therefore, it is waived. *See **Forbess v. Forbess***, 370 S.W.3d 347, 356 (Tenn. Ct. App. 2011) (holding that a party waived an issue by failing to designate it in his statement of the issues).